**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| Sameul Hryncewiz | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 1-24-cv-263 |
| v. | ) | |
| | ) | |
| City of Jasper, et al. | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

In support of their motion for summary judgment, the Defendants, Justin Graham, Derrick Long, and the City of Jasper, Tennessee (the City"), allege as follows:

On August 5, 2023, Officer Derrick Long ("Officer Long") of the Jasper Police Department ("JPD") conducted a traffic stop of a vehicle in which the Plaintiff was passenger. Doc. 1, Page ID #3. Prior to the stop, Officer Long observed the driver of the vehicle run a stop sign. Ex. 1, Excerpts from the Depo. of Derek Long, p. 23:3-5.

After the driver of the vehicle stopped, Officer Long approached the vehicle from the driver's side. Ex. 2, Derrick Long Body Camera Footage, 00:30. Officer Long asked the driver for her license, registration, proof of insurance and also asked the Plaintiff for his identification. Id. at 00:50. After the driver looked for a short period of time, she told Officer Long she could not find the requested information. Id. at 2:40. At about the same time the driver stated she could not find the requested documents, Officer Justin Graham ("Officer Graham") of the JPD arrived at the passenger side of the vehicle. Ex. 3, Justin Graham Body Camera Footage, (00:55). While standing near the

1

rear passenger side of the vehicle, Officer Graham shined his flashlight in the backseat and said "Derrick, he's got an AR back here in the back seat." Id.

Officer Long then asked again whether the Plaintiff had his identification on him. Ex. 2, Derrick Long Body Camera Footage at 3:00. The Plaintiff responded, "for what?" Id. at 3:05. Officer Long stated, "I just like to know who I'm dealing with." Id. The Plaintiff responded, "my name is Sal . . Hryncewiz." Id. at 3:10.

Officer Long then asked who had been drinking, and the Plaintiff stated that he had. Id. at 3:15. In fact, the Plaintiff testified at his deposition that prior to the traffic stop, he had consumed twelve sixteen-ounce beers. Ex. 4, Excerpts from Depo. of Plaintiff, p. 24:20 - 25:19.

Officer Graham again asked who had been drinking and asked the Plaintiff if he had any identification on him. Ex. 3, Justin Graham Body Camera Footage, 01:35. Officer Graham asked whether the Plaintiff had any way to identify himself, and the Plaintiff said "yessir, Kevin Snyder, Dunlap, Tennessee." Id. at 01:40. Officer Graham then asked for the Plaintiff's date of birth, and the Plaintiff stated he had done nothing wrong. Id. at 01:45. Officer Graham asked again for the Plaintiff's name and date of birth. Id. at 02:15. The Plaintiff responded, "my name is Sal Hryncewiz." Id. Officer Graham stated, "I thought you told me your name was Kevin Sowder." Id. The Plaintiff then gave Officer Graham the name Thomas Austin of Dunlap, Tennessee. Id. at 02:20. Officer Graham asked again for the Plaintiff's name and date of birth, and the Plaintiff responded "Hryncewiz." Id. at 02:25. Officer Graham said "do what now sir . . . I need to know your name and date of birth," and the Plaintiff responded, "I have done nothing wrong." Id.

Officer Graham then asked the Plaintiff to get out of the vehicle. Id. at 02:35. The Plaintiff said "I will not" to Officer Graham's command to get out of the vehicle, and the Plaintiff said several

times that he had done nothing wrong. Id. Officer Graham then opened the passenger-side door. Id. About that same time, Officer Long came to the passenger side of the vehicle and stood beside Officer Graham. Ex. 2, Derrick Long Body Camera Footage, 04:35. Officer Graham then asked at least another eight times for the Plaintiff to step out of the car before Officer Graham un-buckled the Plaintiff's seat belt. Ex. 3, Justin Graham Body Camera Footage, 02:40 - 03:11. After he un-buckled the Plaintiff's seat belt, Officer Graham and Officer Long grabbed the Plaintiff's left wrist while he continued to tell the Plaintiff to get out of the car. Id. at 03:15; Ex. 2, Derrick Long Body Camera Footage, 05:20. Officer Long then opened the rear passenger side door and tried to push the Plaintiff out of the vehicle. Ex. 2, Derrick Long Body Camera Footage, 05:25. The Plaintiff actively resisted the attempts by Officer Graham and Officer Long's attempts by using his body weight to wedge himself inside the passenger seat of the vehicle. Ex. 4, Excerpts from the Depo. of Plaintiff, p. 45:6-46:16; Ex. 5, Excerpts from the Depo. of Justin Graham, p. 33:23 - 34:22; See also Ex. 6, Jasper Police Department Use of Force Policy, p. 2.

After struggling with the Plaintiff for several seconds, Officer Graham warned the Plaintiff he would be pepper-sprayed if he did not get out of the car. Ex. 3, Justin Graham Body Camera Footage, 03:27. Officer Graham then deployed the pepper spray at the Plaintiff. Id. Officer Graham was effected by the pepper spray, and backed away and briefly walked to his patrol vehicle. Id. at 03:45. During that time, Officer Long went to the front passenger side of the vehicle and said "just step out, you're making this a lot worse." Ex. 2, Derrick Long Body Camera, 05:40. Officer Long tried again several times to physically remove the Plaintiff from the vehicle by pulling at the Plaintiff. Id. at 05:45. Officer Long stated, "just get out and be cooperative, this ain't gotta be this hard." Id. at 06:00.

3

Officer Graham then came back to the passenger side of the vehicle and used various techniques, including a strike to the side of the Plaintiff's head in a further attempt to remove the Plaintiff from the vehicle. Ex. 3, Justin Graham Body Camera Footage, 04:20 - 05:30. When those techniques did not work, Officer Graham tased the Plaintiff and continued to the give the Plaintiff commands to exit the vehicle. Id. at 05:30. The Plaintiff finally exited the vehicle, was placed on his stomach and was handcuffed by Officer Graham, Officer Long and another officer who had arrived on scene. Id. at 05:50. After the Plaintiff was in handcuffs, Officer Graham explained that before he asking the Plaintiff to exit the vehicle, he observed what appeared to be a firearm in the backseat. Id. at 06:25.

The Plaintiff was arrested and charged with two counts of assault, criminal impersonation, and resisting arrest. Ex. 4, Excerpts from the Depo. of Plaintiff, p. 71:2-13. The Plaintiff was eventually indicted by the Marion County Grand Jury on those offenses. Ex. 7, Indictments. Ultimately the charges were dismissed upon six months of the Plaintiff's good behavior. Ex. 8, Agreed Order for Conditional Dismissal.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that summary judgment will be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Morris v. Crete Carrier Corp., 105 F.3d 279, 280-81 (6th Cir. 1997); White v. Turfway Park Racing Ass'n., Inc., 909 F.2d 941, 943 (6th Cir.

4

1990); 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986); White, 909 F.2d at 943-44; 60 Ivy Street, 822 F.2d at 1435. The moving party is entitled to a summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. Celotex, 477 U.S. at 322-23; Collyer v. Darling, 98 F.3d 211, 200 (6th Cir. 1996).

## LAW AND ARGUMENT

**1. The Plaintiff's 42 U.S.C. §1983 claims are controlled by the Fourth Amendment. Accordingly, any claims under the Fourteenth Amendment are due to be dismissed.**

In order to maintain a claim against the City under §1983, the Plaintiff must first show he "(1) was deprived of a right secured by the Constitution or laws of the United States; and (2) that [he] was subjected or caused to be subjected to that deprivation by a person acting under color of state law." Gregory v. Shelby Cnty., 220 F.3d 433, 441 (6th Cir. 2000). The first step in any §1983 case is to identify the specific constitutional right that was allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994).

In this case, the Plaintiff alleges various Fourth Amendment violations based upon theories of excessive force and false arrest. "Excessive force claims, however, can be raised under the Fourth, Eight, and Fourteenth Amendments. Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is whether the plaintiff is a free citizen, convicted

5

prisoner, or fit in some gray area in between the two. The Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens." Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013) (citations omitted). Moreover, "the Fourth Amendment provides an explicit source of constitutional protection to [p]laintiff concerning his false arrest." Miller v. Watlington, No. 3:23-cv-00052, 2023 U.S. Dist LEXIS 37557, at *7 (M.D. Tenn. April 18, 2023); See also Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'")

Stated plainly, the Plaintiff's §1983 claims are controlled by the Fourth Amendment. Thereby, any claims under the Fourteenth Amendment are due to be dismissed.

**2. The Plaintiff's arrest was supported by probable cause. Therefore, the Defendants are due to be granted summary judgment on the Plaintiff's false arrest claim.**

To succeed on a §1983 false arrest claim, "the plaintiff must prove the police lacked probable cause." Brooks v. Rothe, 577 F.3d 701, 706 (6th Cir. 2009). "Probable cause necessary to justify an arrest is defined as, 'whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 302 (6th Cir. 2005) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause does not require the same type of specific evidence of each element of the offense as would be necessary to support a conviction. Crockett v. Cumberland College, 316 F.3d 571, 582 (6th Cir. 2003). Moreover, when an individual is arrested and charged with

6

multiple offenses, so long as there is probable cause for one of the charges, then that individual cannot maintain a claim for false arrest. See Howse v. Hodous, 953 F.3d 402, (6th Cir. 2020) (citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); Alman v. Reed, 703 F.3d 887, 900 n.3 (6th Cir. 2013)) ("What matters is the validity of the arrest (the seizure) and not the validity of every charge (the potential justifications for the seizure). As long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward").

As a result of the incident described in the Complaint, the Plaintiff was charged with resisting, stop, hault, frisk or arrest, two counts of assault and criminal impersonation. As discussed above, the Marion County Grand Jury returned indictments against the Plaintiff on each of these charges, and that determination is dispositive of the Plaintiff's false arrest claim. "As a general rule, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause. However, an exception lies where the indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury." Robertson v. Lucas, 753 F.3d 606, 616 (6th Cir. 2014) (quoting Mott v. Mayer, 524 Fed. Appx. 179 (6th Cir. 2013). "This exception also covers officers who testify with a reckless disregard for the truth." Id. (citing Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010)).

There is absolutely no evidence in the record that demonstrates Graham, Long or any other officer provided false testimony or testified with reckless disregard for the truth before the Marion County Grand Jury. Thereby, the Marion County Grand Jury's determination of probable cause for two counts of assault, resisting stop, hault, frisk or arrest, and criminal impersonation is conclusive.

For this reason, the Defendants are due to be granted summary judgment with respect to Count I.

**3. The undisputed facts demonstrate the force used by Officer Graham and Officer Long against the Plaintiff was reasonable under the totality of the circumstances.**

When analyzing a Fourth Amendment claim brought pursuant to 42 U.S.C. §1983 based upon an alleged unreasonable seizure, the first step is to identify the seizure. Gaddis v. Redford Twp., 364 F.3d 763, 772 (6th Cir. 2004). Only after it is determined that a seizure occurred can the method of such a seizure be challenged. Id. at 203. The Sixth Circuit holds that "the Fourth Amendment protects against 'unreasonable seizures,' not unreasonable or even outrageous conduct in general." Galas, 801 F.2d at 202. Also notable in use of force cases, after the seizure is identified, the Court must "proceed to examine whether the force used to effect that seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create those circumstances." Dickerson v. McClellan, 101 F.3d 1151, 1161 (6th Cir. 1996).

To assess the reasonableness of a seizure, the Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985). Courts must view the "facts and circumstances of the case" from the "perspective of a reasonable officer on the scene and not with 20/20 hindsight." Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir. 2007) (citing Graham, 490 U.S. at 395-96). Courts consider the following, non-exclusive factors, to assess the reasonableness of a use of force, "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989) (numbering added). "Of course, the use of force can be reasonable, even when the crime at issue is innocuous." Thomas v. Plummer, 489 F. App'x 116, 126 (6th Cir. 2012); See also Turner v. City of

8

Toledo, No. 3:07 CV 274, 2012 U.S. Dist. LEXIS 66908, 2012 WL 1669836, at *8 (N.D. Ohio May 14, 2012) ("Turner's initially minor crime does not abrogate his failure to comply with, and his physical resistance to," the officers). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are intense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Untalan v. City of Lorain, 430 F.3d 312, 315 (6th Cir. 2005). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396. Uses of force are analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, . . . allow[ing] for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Graham, 490 at 396-97. Ultimately, the inquiry turns on whether the seizure was reasonable under the totality of the circumstances. Slusher v. Carson, 540 F.3d 449, 455 (6th Cir. 2008).

**Officer Long**

The Complaint is fairly vague as to what unlawful conduct the Plaintiff specifically attributes to Officer Long. For example, the Plaintiff alleges in paragraph 16, "[o]fficers opened the passenger's door, attempted to pull Samuel Hryncewic out of the vehicle." Doc. 1, Page ID #3. The Plaintiff vaguely alleges further that "[a]s Officer Justin Graham and Officer Derrick Long were handcuffing Samuel Hryncewiz from the rear, he was also kneeing his back and twisting his leg, causing a great deal of pain." Id. at Page ID #4. Notably, the Plaintiff also does not allege any unlawful conduct specifically attributable to Officer Long in the body of Counts I and II. Id. at Page

9

ID #5-6.

The lack of specific allegations against Long is significant because "[a] §1983 plaintiff generally must prove that a defendant was personally at fault and that the defendant's culpable conduct (not somebody else's) caused the injury." Pineda v. Hamilton Cnty., Ohio, 977 F.3d 483, 490 (6th Cir. 2020). In other words, Officer Long may only be held liable for his own actions, not for the actions of others. Beck v. Hamblen Cnty., Tenn., 969 F.3d 592, 600 (6th Cir. 2020) ("Section 1983 also permits plaintiffs to obtain damages from a government official only for that official's own actions, not for the actions of others."). In order to establish liability against Officer Long, Plaintiffs must demonstrate he "actively engaged in unconstitutional behavior." Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006).

Here, the Plaintiff has failed to specifically attribute any conduct to Officer Long which violated the Plaintiff's civil rights. First, there is no dispute that the vehicle in which the Plaintiff was a passenger was lawfully stopped based upon the failure of the driver to stop at a stop sign. Further, once the vehicle stopped, Officer Long and Officer Graham were well within their right to request the Plaintiff's identification. See United States v. Alexander, 467 F.App'x 355, 367 (6th Cir. 2012) ("an officer does not violate the Fourth Amendment during a traffic stop by asking for passenger identification, even where there was no reasonable suspicion of any wrongdoing by the passengers").

Second, officers gave the Plaintiff lawful orders to exit the vehicle after the vehicle was stopped. This issue was squarely address in Maryland v. Wilson, 519 U.S. 408 (1997). In that case, a Maryland state trooper pulled over a vehicle that was speeding and had no license plate. Id. at 410. The vehicle contained the driver and two passengers. Id. One of the passengers was ordered to exit

10

the vehicle, and when he did, crack cocaine fell to the ground. Id. at 411. The passenger was arrested and charged with possession and intent to distribute the crack cocaine. Id. The passenger moved to suppress evidence of the crack cocaine and that motion was granted by the state trial court and upheld on appeal to the Maryland Court of Appeals. Id. at 411. The U.S. Supreme Court then granted certiorari and reversed the Maryland courts. Id. Notably, the Supreme Court extended its ruling in Pennsylvania v. Mimms, 434 U.S. 106 (1977), wherein the Court held the driver of a vehicle lawfully stopped could be ordered to exit their vehicle without violating the Fourth Amendment. See Mimms, 434 U.S. at 111. The Supreme Court in Wilson held:

> In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

Wilson, 519 U.S. 414-15. Accordingly, it did not violate the Plaintiff's civil rights to be ordered to exit the vehicle during the pendency of the traffic stop.

Moreover, all the undisputed evidence shows with respect to any force used by Officer Long is that he verbally ordered the Plaintiff to exit the vehicle, and he attempted to remove the Plaintiff from the vehicle using soft-hand techniques. As discussed above, the verbal commands were lawful, and after the Plaintiff refused those commands, it was reasonable for Officer Long to use soft-hand techniques to try to push or pull the Plaintiff from the vehicle, particularly in light of the Plaintiff's apparently intoxicated state and the presence of what appeared to be a firearm in the back seat. Additionally, the video evidence does not support the allegation that officers did anything improper while placing handcuffs on the Plaintiff. Notably, the Plaintiff's own expert, John Daniel, agreed

11

Officer Long did not use excessive force during the course of his encounter with the Plaintiff, and he also testified that the techniques used to hand cuff the Plaintiff were proper. Ex. 9, Excerpts from the Depo. of John Daniel, p.90:23-25; 85:3-4. Thereby, there is no genuine dispute as to whether Officer Long's acts amounted to excessive force. Accordingly, Count II, as it is pled against Officer Long, is due to be dismissed.

**Officer Graham**

The undisputed facts demonstrate Officer Graham used force in the following ways in order to effect the lawful detention, and eventually, the arrest of the Plaintiff: (1) verbal commands, (2) soft hand techniques, (3) OC spray, (4) hard hand techniques and, (5) a taser. Officer Graham submits his actions throughout the encounter were reasonable under the circumstances.

It is first important to note that before Officer Graham used any force at all, Officer Graham saw what appeared to be a firearm located in plain view in the back seat of the vehicle and was aware the Plaintiff had been drinking and was likely intoxicated. In fact, at his deposition, the Plaintiff testified that in the hours prior to the traffic stop, he consumed twelve (12) sixteen-ounce beers. Ex. 4, Excerpts from the Depo. of Plaintiff, p. 24:20 - 25:3. Courts in the Sixth Circuit acknowledge that an intoxicated person can pose an increased threat to law enforcement, "[d]runk persons are generally unpredictable" and "heavy intoxication create[s] a more volatile situation . . ." Marvin v. City of Taylor, 509 F.3d 234, 246 (6th Cir. 2007). In other words, before Officer Graham used any force, he was aware the Plaintiff was potentially intoxicated and that the Plaintiff may have access to one or more weapons.

Addressing the force used by Officer Graham in order, as discussed above, Officer Graham's verbal commands to the Plaintiff to exit the vehicle were lawful. Officer Graham was entitled, under

12

<u>Pennsylvania v. Mimms, supra</u>, to ask the Plaintiff to exit the vehicle during the pendency of the traffic as a precautionary measure even without identifying any specific risk of harm.

The undisputed evidence demonstrates the Plaintiff outright refused Officer Graham's directive to exit the vehicle. At that point, Officer Graham felt threatened, as he then knew (1) that there was what appeared to be at least one firearm in the vehicle, (2) the Plaintiff was likely intoxicated, and (3) that the Plaintiff verbally refused lawful commands to exit the vehicle. See Ex. 5, Excerpts from the Depo. of Justin Graham, p. 20:18-23. Therefore, Officer Graham opened the passenger-side door, unbuckled the Plaintiff's seatbelt, and used his hands in an attempt to get the Plaintiff out of the vehicle, all while he continued to give verbal commands for the Plaintiff to exit. These actions were reasonable given the Officer Graham was aware of the presence of what appeared to be a firearm in the back seat and because the Plaintiff verbally refused Officer Graham's lawful commands to exit the vehicle. See Ex. 10, Expert Report of Thom Corley, p. 16-18. Notably, when analyzing excessive force cases, courts "ha[ve] long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989

Thereafter, it is undisputed that the Plaintiff resisted Officer Graham and Officer Long's attempts to pull him from the vehicle using their hands by wedging himself inside the vehicle and by swinging his arms and pushing Officer Graham away. See Ex. 5, Excerpts from the Depo. of Justin Graham, p. 34:5-15. Notably, in the Sixth Circuit, "[l]ocking up one's body to prevent officers from effecting an arrest constitutes active resistance." <u>Williams v. Fair</u>, No. 2:24-cv-10495, 2024 U.S. Dist. LEXIS 221574, at *18-19 (E.D. Mich. Dec. 6, 2024) (citing <u>Rudlaff v. Gillispie</u>, 791 F. 3d 638, 642 (6th Cir. 2015).

13

Morever, moving to the next use of force, courts in the Sixth Circuit have found it reasonable for an officer to use OC spray on a subject who refused to exit a vehicle after multiple verbal commands and after the subject actively resisted officers' attempts to remove the subject from the vehicle with their hands. See Winer v. Sturgill, 2023 U.S. Dist. LEXIS 91247, at *16 (E.D. Ken. May 25, 2023). ("Here, Sturgill's conduct was reasonable because he depolyed OC spray after Winer continually ignored verbal commands and actively resisted arrest . . . [a]nd while the circumstances surrounding the spray may not have been emergent, he acted in response to a reasonable fear for officers' safety . . .). Under these circumstances, where faced with the Plaintiff's active resistance, it was reasonable for Officer Graham to use OC spray against the Plaintiff in a further attempt to get the Plaintiff out of the vehicle. See Ex. 10, Expert Report of Thom Corley, p. 19-21.

Next, it was reasonable for Officer Graham to strike the Plaintiff on the side of his head. After Officer Graham briefly walked away from the vehicle, Officer Long went to the open passenger-side door and continued to attempt to pull the Plaintiff from the vehicle, and the Plaintiff continued to refuse Officer Long's verbal commands and his attempts to remove the Plaintiff from the vehicle using his hands. Ex. 2, Derrick Long Body Camera Footage, 05:43. When Officer Graham returned to the vehicle, he also again attempted to remove the Plaintiff from the vehicle by pulling the Plaintiff's right leg before he struck the Plaintiff. Id at 06:15; Ex. 3, Justin Graham Body Camera Footage, 04:25. Again, Officer Graham took this action only after (1) the Plaintiff stated he had been drinking; (2) Officer Graham saw what appeared to be a firearm in the back seat of the vehicle, (3) the Plaintiff outright refused lawful verbal commands to exit the vehicle, (4) several rounds of soft hand techniques failed, (5) the Plaintiff did not exit after OC spray was used, and (6) the Plaintiff continued to physically and actively resist Officer Graham and Officer Long. By his own

14

admission, the Plaintiff was actively resisting attempts to remove him from the vehicle, thereby it was not unreasonable for Officer Graham to strike the Plaintiff on the side of the head. See Whyde v. Sigsworth, 2022 U.S. Dist. LEXIS 59014, at *52 (N. D. Ohio March 30, 2022) (holding clearly established constitutional rights not violated by single punch when subject was actively resisting attempts to extract him from a cell).

Then, because all previous efforts to remove the Plaintiff from the vehicle failed and because the Plaintiff continued to actively resist, Officer Graham's use of a taser was reasonable. The video evidence demonstrates Officer Graham continued attempts to remove the Plaintiff from the vehicle with his hands after Officer Graham struck the Plaintiff in the head. Ex. 3, Justin Graham Body Camera Footage, 04:28. In the Sixth Circuit, when a subject is actively resisting, the use of a taser is reasonable. See Thomas v. City of Eastpointe, 715 Fed. Appx. 458, 460 (6th Cir. 2017).

Significantly, after the Plaintiff was tased, he exited the vehicle, was handcuffed and no further force was used. In other words, Officer Graham and Officer Long used no force on the Plaintiff after he was subdued. Though the Complaint contains allegations regarding the method used to handcuff the Plaintiff, the video evidence contradicts the Plaintiff's allegations. As shown on Officer Graham's body camera, the Plaintiff was quickly placed in handcuffs, and Officer Graham and Officer Long swiftly got off of the Plaintiff. Ex. 3, Justin Graham Body Camera Footage, 06:00. Again, the Plaintiff's own expert had no criticism of anything that occurred after the Plaintiff was tased, including how the Plaintiff was handcuffed.

To summarize, the force against the Plaintiff was reasonable under the totality of the circumstances. Officer Graham and Officer Long were aware the Plaintiff was likely intoxicated and were aware of the presence of what appeared to be a firearm in the backseat of the car. Accordingly,

15

Officer Graham lawfully commanded the Plaintiff to exit the vehicle. When the Plaintiff verbally refused those commands, it was reasonable for Officer Graham and Officer Long to use *de minimis* soft-hand techniques to try to get the Plaintiff out of the vehicle. The Plaintiff admittedly actively resisted those attempts by wedging himself in the passenger seat and by swinging his arms to resist Officer Graham and Officer Long. Accordingly, it was reasonable for Officer Graham to then use other techniques, including OC spray, hard hand control and a taser to get the Plaintiff out of the vehicle. For all these reasons, Officer Graham and Officer Long are due to be granted summary judgment with respect to the Plaintiff's excessive force claims.

**4. Graham and Long are entitled to qualified immunity.**

The undisputed facts and evidence in the record demonstrate neither Officer Graham or Officer Long violated any of the Plaintiff's clearly established constitutional rights. Accordingly, Officer Graham and Officer Long are entitled to qualified immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 342 (1986)). It is also "well-settled that qualified immunity must be assessed in the context of each individual[] [officer's] specific conduct." Stoudemire v. Mich. Dep't of Corr. 705 F.3d 560, 570 (6th Cir. 2013) (quoting Reilly v. Vadlamudi, 680 F.3d 617, 624 (6th Cir. 2012)).

This circuit held in Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992) that the burden

16

is on the Plaintiff to show that a clearly established right had been violated:

> When a claim to qualified immunity is raised within the context of a motion for summary judgment, the non-movant must allege facts sufficient to indicate that the act in question violated clearly established law at the time the act was committed. See Dominique v. Telb, 831 F.2d 673, 677 (6th Cir 1987) (holding that the plaintiff is obliged to present facts that, if true, would constitute a violation of clearly established law). Thus, the plaintiff must effectively pass two hurdles when facing a defendant on summary judgment who claims qualified immunity. First, the allegation must "state a claim of violation of clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Second, the plaintiff must present "evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." Id. At the summary judgment stage, whether the legal violation alleged was clearly established at the time of the incident, as well as whether a genuine issue of material fact exists as to whether the alleged violation occurred, are questions of law for the court. Dominique, 831 F.2d at 677.

Russo, 953 F.2d at 1043. In addition, the Supreme Court has further refined the burden a plaintiff must establish to defeat qualified immunity. The Supreme Court has held that the actions of a police officer must have violated a clearly established right and that right must be so clear "that every reasonable officer would have understood that what he is doing violates that right." Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011).

Further, "[a]lthough '[the Supreme Court's] case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Rivas-Villegas v. Cortes-Luna. No. 20-1539, 2021 U.S. LEXIS 5311, at *6 (2021) (quoting White, 137 S. Ct. at 551). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'") Rivas-Villegas, 2021 LEXIS 5311 at *6 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).

Now that Officer Graham and Officer Long have raised the defense, the burden is on the

Plaintiff to show that some conduct specifically attributable to them violated a clearly established right. For the reasons asserted above, the Graham and Long submit the Plaintiff cannot meet this burden, and that the claims against them should be dismissed.

**5. The Plaintiff cannot demonstrate the City maintained any unlawful policy, procedure or custom which was the moving force behind the Plaintiff's alleged injuries.**

In addition to showing a constitutional deprivation, the City may then only then be liable (1) "when execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," and (2) "when there is an affirmative link between the policy and the particular constitutional violation alleged." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); see also Petty v. County of Franklin, Ohio, 478 F.3d 341, 347 (6th Cir. 2007). In other words, the Plaintiff may not rely on *respondeat superior* to hold the City liable for the acts of Officer Graham and/or Officer Long. Rather, the Plaintiff must identify the policy or custom that caused the injury and must show the policy is unlawful. Monell, 436 U.S. at 694 (1978); Ford v. County of Grand Traverse, 535 F.3d 483, 495 (6th Cir. 2008).

The allegations in the Complaint alone do not suffice in order for the Plaintiff to maintain a claim against the City. See Pethtel v. State Dep't of Children Servs., No. 3:10-cv-469-TAV-HBG, 2020 U.S. Dist. LEXIS 217910, at *61-62 (E.D. Tenn. Nov. 20, 2020) (quoting Broyles v. Corr. Med. Servs., Inc., No. 08-1638, 2009 U.S. App. LEXIS 5494, at *2 (6th Cir. Jan. 23, 2009) ("[B]are allegations of custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief.")

Rather, in order to establish that the City's policy was unconstitutional, the Plaintiff must

18

establish that the City's adoption of the policy or custom was made with "deliberate indifference" as to its known or obvious consequences."  Id. (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997)). As the Sixth Circuit has noted, "deliberate indifference is neither simple nor heightened negligence, but a 'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. (quoting Brown, 520 U.S. at 410). Further, "[t]he risk of a constitutional violation resulting from the municipal policy at issue must be plainly obvious."  Id., Adams v. City of Clarksville, Civil Action No. 3:09-cv-220, 2010 U.S. Dist. LEXIS 155408, at *62-63 (M.D. Tenn. Sep. 21, 2010).  "[D]eliberate indifference 'does not mean a collection of sloppy, or even reckless oversights, it means evidence showing an obvious, deliberate indifference' to an alleged violation."  Thomas v. City of Chattanooga, 398 F.3d 426, 433 (6th Cir. 2005) (quoting Doe v. Claiburne County, 103 F.3d 495, 508 (6th Cir. 1996)). Moreover, the Plaintiff cannot establish deliberate indifference based solely upon the instance involving the Plaintiff as "[o]ne instance alone cannot establish that the [c]ity had a custom of deliberate indifference to Plaintiff's constitutional rights." Parson v. City of Ann Arbor, Case No. 2:20-cv-10486, 2021 U.S. Dist. LEXIS 38527, at *24 (E.D. Mich. March 2, 2021) (citing Griffith v. Franklin Cnty., Ky., 975 F.3d 554, 583 (6th Cir. 2020). In other words, without pointing to something outside of this single instance of alleged misconduct, the Plaintiff cannot establish even an inference that the City maintained any unlawful policy, procedure or custom. See Thomas v. City of Chattanooga, 398 F.3d 426, 433 (6th Cir. 2005) ("[Plaintiff] cannot rely solely on a single instance to infer a policy of deliberate indifference.")

Here, the Plaintiff has produced no evidence to support his bare allegation that the City maintained some unlawful policy, procedure or custom. Accordingly, the City is due to be granted

19

summary judgment with respect to the §1983 pled against it.

**6. If the Court dismisses the Plaintiff's federal claims, it may decline to exercise supplemental jurisdiction and dismiss the state law claims.**

Pursuant to 28 U.S.C. §1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once the claims they have original jurisdiction over are dismissed. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996).

Moreover, the Court could also properly deny supplemental jurisdiction pursuant to §1367(c)(4). Jurisdiction for claims arising under the TGTLA generally rests with the circuit courts in Tennessee. T.C.A. §29-20-305(a). The Court may properly decline to exercise supplemental jurisdiction given "exceptional circumstances" and "compelling reasons for declining jurisdiction" when claims are subject to the TGTLA.

> In this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction. Accordingly, we find no error in the magistrate judge's dismissal of the official capacity claim against [an officer].

Gregory v. Shelby Cnty., Tenn., 220 F.3d 433, 446 (6th Cir. 2000). Therefore, the state law claims can also be properly dismissed pursuant to §1367(c)(4).

20

For these reasons, if the Court dismisses the federal claims, it would also be proper for the district court to decline to exercise supplemental jurisdiction over the state law claims and to dismiss those claims.

**7. Even if the Court retains jurisdiction, Officer Graham and Officer Long are due to be granted summary judgment with regard to the state law claims.**

**a. The false arrest claim fails because the Plaintiff's arrest was supported by probable cause.**

Much like the §1983 claim, Officer Graham and Officer Long are due to be granted summary judgment with regard to the state law false arrest claim because the Plaintiff's arrest was supported by probable cause. In Tennessee, to recover for a claim of false arrest, the Plaintiff must establish (1)"the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d 656, 659 (Tenn. 1990).

Here, the Plaintiff cannot establish his detention was unlawful, because his arrest was supported by probable cause for the same reasons stated above in connection with the §1983 claims. Accordingly, his state law claim for false arrest must fail.

**b. The claims of assault and battery fail because the use of force against the Plaintiff was reasonable.**

In Tennessee, a police officer can be liable for "damages caused by his excessive and unprivileged use of force under the intentional tort of battery." Stafford v. Jckson Cty, 2017 Tenn. App. LEXIS 528, at *10 (Tenn. Ct. App. August 4, 2017) (quoting City of Mason v. Banks, 581 S.W.2d 621, 626 (Tenn. 1979). Tennessee courts apply the same analysis in these types of assault and battery claims as federal courts in §1983 excessive force cases. Id. (citing Harris v. Metro. Gov't of Nashville, No. 3:06-0868, 2007 U.S. Dist. LEXIS 92895, at *9 (M.D. Tenn. Dec. 18, 2007)

21

(quoting Murray ex rel. Morrow v. Metro. Gov't of Nashville, No. 3:06-0570, at *9 (M.D. Tenn. May 21, 2007)) ("Tennessee courts look to federal case law on excessive force in analyzing claims of assault and battery by police officers.").

Accordingly, if the Court finds the use of force was reasonable and necessary when analyzing the §1983 excessive force claim, then it should also do the same with respect to the state law claims of assault and battery.

**c. Officer Graham and Officer Long are entitled to qualified immunity.**

Like the §1983 claims, Officer Graham and Officer Long are entitled to qualified immunity for the state law claims. In Tennessee, qualified immunity "is more than simply a defense to liability." Luna v. White Cnty. No. M2014-02111-COA-R3-CV, 2015 Tenn. App. LEXIS 525, at *13 (Tenn. Ct. App. June 29, 2015). "Its purpose is to immunize a public official from harassment, expense, and distraction caused by the lawsuit itself." Id. To determine whether a government official is entitled to qualified immunity, Tennessee courts hold:

> Qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all circumstances, coupled with good-faith belief that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

Id. (quoting Youngblood v. Clepper, 856 S.W.2d 405, 407 (Tenn. Ct. App. 1993). On a motion for summary judgment, Tennessee courts analyze qualified immunity as follows:

> When a public official seeks a summary judgment on the ground of qualified immunity, the claim should be treated as an affirmative defense. Accordingly, when the public official alleges that the

22

undisputed facts demonstrate he or she is entitled to qualified immunity, the burden of production shifts to the plaintiff to demonstrate that the public official is not entitled to qualified immunity. A public official establishes a prima facie claim of qualified immunity that he or she is a state official acting within his or her discretionary authority. A plaintiff confronted with a summary judgment motion raising qualified immunity must demonstrate the inapplicability of the defense. The plaintiff can defeat the motion either by demonstrating the existence of material factual disputes or by demonstrating that the defendant is not entitled to qualified immunity as a matter of law.

Luna, 2015 Tenn. App. LEXIS 525, at *14 (quoting King v. Betts, 354 S.W.3d 691, 710 (Tenn. 2011). Here, there is no dispute that Officer Graham and Officer Long acted within the scope of their authority at the time of the alleged incident. Further, there is no evidence that Officer Long and Officer Graham acted with anything other than good faith.

Now that the defense has been raised, it is the Plaintiff's burden to show qualified immunity does not apply. Officer Graham and Officer Long respectfully submit the Plaintiff cannot make such a showing, therefore the state law claims of false arrest, assault, and battery are due to be dismissed.

**d. The City retains its immunity for the state law claims of false arrest, assault, and battery.**

As discussed above, the Plaintiff's state law claims are governed by the TGTLA. "The TGTLA codifies the Tennessee common law rule of sovereign immunity for counties, municipalities, and other governmental entities." Campbell v. Anderson County, 695 F. Supp. 2d 764, 776-77 (E.D. Tenn. 2010) (citing T.C.A. §29-20-201; Limbaugh v. Coffee Medical Ctr., 59 S.W.3d 73, 79 (Tenn. 2001); Baines v. Wilson Cnty., 86 S.W.3d 575, 578 (Tenn. App. 2002). The TGTLA affirms that municipalities in Tennessee are generally immune from suit. Id. at 777. The TGTLA provides immunity from suit is removed for an "injury proximately caused by a negligent act or omission of

23

any employee within the scope of his employment," however, the TGTLA also provides a list of exceptions to this removal of immunity. *See* Tenn. Code Ann. §29-20-205.

Among those exceptions to the removal of the City's immunity are claims for "false arrest . . . infliction of mental anguish . . . or civil rights." Id. Accordingly, because the City is plainly retains its immunity for the claims of false arrest and intentional infliction of emotional distress, and because the state law claims arise out of a civil rights claim, the state law claims are due to be dismissed. See <u>Campbell v. Anderson County</u>, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("Because Campbell asserts her [false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence] claims against the County in the context of a civil rights case, her alleged injuries arise out of 'civil rights' and the County is entitled to immunity from suit on these claims pursuant to the 'civil rights' exception in [T.C.A.] §29-20-205").

## CONCLUSION

For all of the reasons stated herein, the Defendants respectfully submit they are entitled to summary judgment with respect to each and every claim asserted in the Complaint, and therefore, all claims are due to be dismissed.

Respectfully submitted,

ROBINSON, SMITH & WELLS, LLC
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, TN   37450
Telephone:     (423) 756-5051
Facsimile:     (423) 266-0474

By:     *Philip Aaron Wells*
        Philip Aaron Wells, BPR #036248
        awells@rswlaw.com

24

*Attorney for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of July 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Robinson, Smith & Wells, PLLC

By: ___/s/ Philip Aaron Wells_____

cc:     Robert Floyd Davis, BPR# 030129
       Davis, Kessler & Davis
       433 Cherokee Blvd
       Chattanooga, TN 37330
       robert@daviskessler.com