UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SAMUEL HRYNCEWIZ, | ) |
| *Plaintiff*, | ) ) ) |
| | ) Case No. 1:24-cv-263 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| CITY OF JASPER, TENNESSEE, et al., | ) ) |
| *Defendants*. | ) ) |

# **MEMORANDUM**

Before the Court is a motion for summary judgment by Defendants, City of Jasper, Tennessee (the "City"), Justin Graham, and Derrick Long. (Doc. 24.) Plaintiff timely filed a response in opposition (Doc. 28.) and Defendants replied (Doc. 29).

For the reasons set out below, the Court will **GRANT** Defendants' motion for summary judgment (Doc. 24).

## I. BACKGROUND[1]

On August 5, 2024, Defendant Long of the Jasper Police Department conducted a traffic stop of a vehicle allegedly running a stop sign. (Doc. 1 at ¶ 8.) The Plaintiff, Samuel Hryncewiz, was in the front passenger seat. (*Id*.) Defendant Long approached the driver-side of the vehicle and began conversing with the driver in a routine manner. (*Id*. at ¶ 9.) Soon after, Defendant Graham arrived at the passenger-side window. (Doc. 24 at 1.) Upon shining his flashlight into the vehicle, he informed Defendant Long that there was a firearm in the back seat. (*Id*. at 1–2.)

---

[1] Factual disputes and reasonable inferences regarding the underlying facts are presented in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendant Long asked Plaintiff his name and for identification. (Doc. 1 at ¶ 9.) Plaintiff responded that he did not have any identification with him and asked why it was necessary. (*Id*. at ¶ 9–10.) Defendant Long said he "wanted to know 'who he was dealing with.'" (*Id*. at ¶ 10.) Defendant Long asked Plaintiff if he had been drinking, which Plaintiff answered in the affirmative. (Doc. 24 at 2.) Plaintiff later testified that he had consumed twelve sixteen-ounce beers that evening. (*Id*.) Defendant Long again inquired as to Plaintiff's identification. (Doc. 1 at ¶ 12.) A miscommunication regarding Plaintiff's name followed, ending with Defendant Long's directing Plaintiff to exit the vehicle. (Doc. 1 at ¶ 12; Doc. 24 at 2.) Plaintiff responded, "I will not" and continued asserting that he had done nothing wrong. (Doc. 24 at 2–3.)

Soon after, Defendant Graham opened the passenger-side door and Defendant Long joined him on that side of the vehicle. (Doc. 1 at ¶ 16.) Defendant Graham directed Plaintiff multiple times in quick succession to exit the vehicle. (Doc. 24 at 3.) Plaintiff continued to plead with Defendants to not make him exit the vehicle and Defendant Graham warned that he would have to use physical force if Plaintiff did not get out on his own. (Graham Body Camera Footage at 2:55–3:03.) Defendant Graham proceeded to unbuckle Plaintiff's seat belt and grabbed Plaintiff's wrists in an attempt to forcibly remove him. (Doc. 1 at ¶ 18; Doc. 24 at 3.) Plaintiff wedged himself into the car to avoid being pulled out. When physical extraction from the front was unsuccessful, Defendants attempted to push him out from behind. (*Id*.) In response, Plaintiff continued resisting while pleading with the officers, continuously saying "please sir" and "I'm trying." (Doc. 24 at 3.)

Defendant Graham subsequently pepper sprayed Plaintiff. (Doc. 1 at ¶ 19.) Defendant Graham continued to yell at Plaintiff to exit the car and Plaintiff continued to repeat that he had done nothing wrong. (Graham Body Camera Footage at 3:30–3:42.) Defendant Graham briefly

walked away due to accidentally being hit by the pepper spray as well. (Doc. 24 at 3.) During this time, he three times stated, "I can't see." (Graham Body Camera Footage at 3:48–4:16.) Meanwhile, Defendant Long continued verbal and physical attempts to remove Plaintiff from the vehicle. (Doc. 24 at 3.) Almost immediately upon Defendant Graham's return to the vehicle, approximately a minute after the pepper spray was deployed, he struck Plaintiff in the head with his hand. (Doc. 1 at ¶ 21; Doc. 24 at 4.) The physical struggle and yelling continued, with Plaintiff insisting that he was not refusing to exit the vehicle, repeating "I can't see" and "officer please" while Defendants continued their attempts to extract him out. (Graham Body Camera Footage at 4:50–5:30.) After approximately a minute of physically struggling with Plaintiff after striking him, Defendant Graham, without any verbal warning, tased Plaintiff. (Doc. 1 at 22; Doc. 24 at 4.) Plaintiff then proceeded, on his own, to step out of the vehicle. Officers, including Defendants, promptly threw Plaintiff onto the pavement stomach down and handcuffed him. (Doc. 1 at ¶ 23; Doc. 24 at 4.) When Defendant Graham mentioned the security threat posed by the firearm in the backseat of the vehicle, Plaintiff responded that he was unaware of the presence of the firearm. (Graham Body Camera Footage at 6:30.) Defendant Graham continued to state that he could not see. (*Id*. at 7:53.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

3

*Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Defendants move for summary judgment with respect to every claim asserted by Plaintiff. (Doc. 24 at 1.) Plaintiff asserts three causes of action under federal law: arrest without probable

cause; excessive force; and municipal liability; as well as four under state law: false arrest; assault and battery; intentional infliction of emotional distress; malicious prosecution.

A. § 1983 Claims

Plaintiff brings two claims under the Fourth Amendment to the Constitution's protection against unreasonable seizure, enforceable through 42 U.S.C. § 1983. (Doc. 1 at 5.) First, that Defendants lacked probable cause to stop or to arrest Plaintiff. Second, that Defendants used excessive force in detaining and arresting Plaintiff. (*Id*.) Regarding the former, Defendants respond that probable cause was established by the grand jury proceedings. Regarding the latter, Defendants Graham and long argue that their actions are covered by the doctrine of qualified immunity and the City argues that it cannot be liable under *Monell*.

1. **Defendants had probable cause for arrest and therefore they also had probable cause to detain Plaintiff**

The Fourth Amendment protects against unreasonable searches and seizures and requires that arrest warrants be issued only upon a showing of probable cause. U.S. Const. amend. IV. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Newman v. Twp. Of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) (quoting *Henry v. United States,* 361 U.S. 98 (1959). To state a Fourth Amendment false-arrest claim, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (quoting *Voyticky v. Vill. of Timberlake,* 412 F.3d 669, 677 (6th Cir. 2005).

A grand jury indictment creates a presumption of probable cause. *See, e.g., Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) ("[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.")

5

(quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)); *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983."). Here, Plaintiff was indicted by the Marion County Grand Jury and there are no allegations of misconduct or false testimony. (Doc. 24–5.) Thus, there is no basis for the constitutional claim and it may properly be dismissed.

### 2. Defendants have qualified immunity as they did not violate a clearly established federal statutory or constitutional right

Defendants Graham and Long assert a defense of qualified immunity. The qualified-immunity doctrine insulates individual state officials from liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Police officers are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Messerschmidt v. Millender,* 565 U.S. 535, 544 (2012). Once a defendant has asserted qualified immunity, the plaintiff bears the burden of overcoming it. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). At the summary judgment stage, this requires a Plaintiff to "state a claim of violation of clearly established law" and present "evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511 (1985).

To determine whether a government official is entitled to qualified immunity, courts "apply a well-established two-prong test: (1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2)

whether the right violated was clearly established such that a reasonable official would understand that what he is doing violates that right." *Mullins*, 805 F.3d at 765.

i. Violation of a Constitutional Right

Fourth Amendment protections against unreasonable seizures also include protections against use of excessive force by law enforcement officers. *Guptill v. City of Chattanooga*, — F.4th —, No. 24-5688, 2025 WL 3295395, at *3 (6th Cir. Nov. 26, 2025). "In analyzing a claim of excessive force, we ask 'whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting them." *Id*. (quoting *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (internal quotations removed). The court here examines only the excessive force claim, as the arrest and detention claims are being resolved on the merits. (S*ee infra* at III(A)(1).)

In *Graham v. Connor*, the Supreme Court set forth three non-exhaustive factors to consider when evaluating an allegedly unreasonable use of force: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989) (numerals added). In doing so, the Court considers the "totality of the circumstances," including the events and circumstances leading up to the use of force. *Barnes v. Felix*, 605 U.S. 73, 76 (2025). This is because "[p]rior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening. Or instead . . . would have perceived the same conduct as innocuous." *Id*. at 80. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 387.

Starting with the severity of the crime, the episode began with a car allegedly running a stop sign. (Doc. 1 at ¶ 8.) Plaintiff only became involved once Defendant Long was questioning the driver and asked for Plaintiff to identify himself as well. (*Id*. at ¶ 9.) Upon a miscommunication regarding Plaintiff's identification and Defendant Graham noticing the firearm in the backseat, Plaintiff was asked to exit the vehicle. (*Id*. at ¶ 12–13.) Plaintiff had not committed an offense of any severity.

Next, the Court takes into consideration the threat posed to the officers or others. Here, the automatic rifle identified by Defendant Graham was loaded and in plain view on the back seat of the vehicle. Plaintiff disputes the extent to which the officers felt threatened by the firearm, noting that Defendants Graham and Long both continued to carry on normal conversations with Plaintiff and the driver. (Doc. 28 at 6.) Plaintiff also argues that the firearm was not a true safety threat because Plaintiff was restrained by a seat belt in the front seat while the firearm was behind him in the back seat. Plaintiff admits that he was highly intoxicated at the time. (Doc. 24 at 2.) However, Plaintiff never made any physical or verbal threats against the officers and at all times was deferential, using words like "please," "sir," and "I'm trying."

Whether Plaintiff actually made any movement towards the back seat is not determinative. See *United States v. Terrell*, 95 F. App'x 746, 748 (6th Cir. 2004) (rejecting argument that the suspect did not pose a safety risk because he sat in the back seat and the gun was in the front seat); *see also Mich. v. Long*, 463 U.S. 1032, 1051 (holding that taking preventative measures during a stop and frisk encounter may be justified because a suspect could "break away from police control and retrieve a weapon from his automobile" or "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.") The firearm was not secured or out of reach. Such a circumstance, combined with an uncooperative,

8

highly intoxicated, person breeds reasonable suspicion of threats to officer safety. *See Marvin v. City of Taylor*, 509 F.3d 234, 246-47 (6th Cir. 2007) (reasoning that heavy intoxication and uncooperative nature "created a more volatile situation" and justified force to restrain). In fact, the act that would have assuaged the security threat, stepping out of the vehicle (and consequently away from the firearm), is precisely what Plaintiff was refusing to do.

The third prong considers whether Plaintiff was actively resisting arrest. The Court of Appeals for the Sixth Circuit has consistently held that failing to exit a vehicle is not active resistance. *Clark v. Franklin Cnty.*, 2025 U.S. Dist. LEXIS 56955, at *19–20 (E.D.KY March 27, 2025) ("noncompliance alone does not indicate active resistance; there must be something more") (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013)). That "something more" could be "defiance using one's own body." (*Eldridge*, 533 F.App'x at 535.) The Court must consider whether Plaintiff's physical resistance, in contrast to his words, rose to the level of "something more" so to amount to active resistance.

The Court does not analyze the tactics Defendants used in a vacuum. *See Barnes*, 605 U.S. at 80. First, Plaintiff refused verbal commands to exit the vehicle. Upon attempts to physically extract him, Plaintiff instead wedged himself into the car. Next, Defendant Graham resorted to using pepper spray to coerce Plaintiff from the car. Only after these methods failed did Defendant Graham physically strike Plaintiff on the head. Ultimately, Defendant Graham deployed a taser, which convinced Plaintiff to submit and exit the vehicle. Plaintiff alleges that the strike to the head was an unreasonable use of deadly force. (Doc. 28 at 7.)

In light of Plaintiff's heavily intoxicated state, sustained noncooperation, and the presence of a firearm, taking into consideration the totality of the situation, Defendants' actions were "objectively reasonable in light of the facts and circumstances." Physicality was not Defendants'

9

first course of action but rather escalated after multiple unsuccessful efforts with less violent means and over a prolonged struggle and continued uncooperative behavior. Therefore, Defendants did not violate Plaintiff's Fourth Amendment rights at the scene of arrest.

ii. Clearly Established Violation

The Court does not condone the conduct or demeanor of Defendant Graham during this episode. Far from it. However, the subjective wrongfulness of a Defendant's actions is not the standard of review. Even if the strike to Plaintiff's head was deemed a use of excessive force, Plaintiff has also failed to establish that the alleged wrongfulness of Defendants' conduct was clearly established at the time. "A right is clearly established when every reasonable official would have understood that what he is doing violates that right." *Guptill*, F.4th No. 24-5688 at *3 (quoting *Reed v. Campbell Cnty.*, 80 F.4th 734, 742 (6th Cir. 2023). Such a showing requires an existing precedent, a sufficiently analogous case or cases, which makes the legality of the conduct beyond debate and the officer's actions "so obviously contradicted by the law." *Id*. at *6-7.

The recently decided case of *Guptill* in the Sixth Circuit Court of Appeals, while not completely analogous due to its being a medical-emergency case, is nonetheless instructive. In *Guptill*, the plaintiff framed the right as "a medical patient's 'right to be free from an unjustified punch to the head by a police officer'" especially when officers 'have no reasonable belief that their victim is a threat.' *Id*. at *7. There, a patient refusing treatment was defensive in nature, pleading with the officer using words like "please" and "sir." *Id*. at *6. The officer "responded by punching [Plaintiff]'s head once into the cinderblock wall." *Id*. at *2. Ultimately, the Court of Appeals could not identify a violation of a clearly established right. *Id*. at *7.

Here, Plaintiff was similarly nonviolent in his response to the officers, was pleading in a similarly respectful manner, and was struck in the head by an officer. However, it is dissimilar in

10

that the officers here had a reasonable belief that Plaintiff was a threat based on his intoxication and the firearm, and the strike was less severe than having his head punched into a cinderblock wall. Even construing the facts in Plaintiff's favor, an inference may be made from *Guptill* that there would correspondingly not be a clearly established right in this case.

Plaintiff has cited no binding caselaw supporting a finding that a single strike to the head of a noncompliant detainee to enforce compliance is a violation of a clearly established right. The Court also cannot find that no reasonable officer would have acted in the same way. Thus, Plaintiff, bearing the burden, cannot prevail on the clearly-established-law prong of qualified immunity either.

### 3. Excessive Force Claims against the City must fail under *Monell*

Plaintiff alleges that the City is liable under § 1983 since it "at all relevant times has maintained a policy, custom, or practice that has been the cause, the moving force, behind the constitutional violation." (Doc. 1 at 6.) In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court recognized § 1983 liability for municipalities. To prevail in a § 1983 claim against a municipality, a plaintiff must prove that (1) agents of the municipality, while acting under color of a state law, (2) violated the plaintiff's constitutional rights, and (3) a municipal policy or policy of inaction was the moving force behind the violation. *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).

A municipality cannot be liable under *Monell* without an underlying constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014). Because there is no finding of a clearly established violation of excessive force, there is no underlying constitutional violation, and accordingly no possible liability for the City under *Monell*.

Regardless, Plaintiff is unable to meet its burden to meet the other *Monell* factors. *See Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 382–83 (6th Cir. 2004) ("even assuming that a constitutional violation occurred, the County cannot be held liable for it.").

There are four recognized *Monell* claims: "(1) an illegal or unconstitutional official policy, (2) ratification of illegal or unconstitutional actions by a policymaker, (3) illegal or unconstitutional actions stemming from a failure to train or supervise, and (4) a custom of tolerance or acquiescence of federal rights violations." *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 U.S. App. LEXIS 13293, at *7 (6th Cir. May 30, 2025) (internal quotation omitted). Plaintiff appears to allege the third, citing "a lack of formal policies and procedures which show deliberate indifference." (Doc. 28 at 9).

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). It must be more than simply negligent. *Id.* at 398; *City of Canton v. Harris*, 489 U.S. 347, 391 (1989) (holding that it is not enough to plead that "an otherwise sound program has occasionally been negligently administered.") Plaintiff must also show "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

There are two ways to establish a failure-to-train claim. A plaintiff can show either a pattern of similar constitutional violations by untrained employees and a "continued adherence to an approach that it knows or should know has failed to prevent tortious conduct by employees," or by establishing a single violation of federal rights that, combined with a showing that the entity

12

has failed to train its employees to handle recurring situations, presents obvious potential for a constitutional violation. *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015).

If proceeding under a pattern theory, Plaintiff has not put forth any evidence of a custom of tolerance or acquiescence to federal rights violations. Plaintiff has not shown any evidence of a pattern of similar violations by other officers.

If Plaintiff is proceeding under the single violation theory, Plaintiff has not presented the necessary evidence to show that the City is liable under *Monell* as a matter of law. Despite not being raised in the complaint, Plaintiff later alleges insufficient or absent internal structures, investigations, policies, and training to deter and hold officers accountable. (Doc. 28 at 9.) In response, the City has shown that certain measures and trainings are in place, including specifically for handling intoxicated individuals. (Doc. 29 at 3.) Defendant also represents that the Chief Police officer "reviews every complaint the city receives regarding its officers." (*Id*.) Even if the policies and procedures are lacking, they do not rise to the level of "deliberate indifference."

Similarly, Plaintiff cannot show that these circumstances were the "moving force" behind Defendants' actions. Plaintiff has not shown that this single incident was combined with a recurring failure to train officers, and that this failure presented an obvious risk of constitutional violations. Consequently, Plaintiff is not able to meet his burden.

### B. State Law Claims

Defendants also move to dismiss Plaintiff's claims for false arrest, assault and battery, intentional infliction of emotional distress, and malicious prosecution. (Doc. 24 at 2.) Pursuant to 28 U.S.C. § 1367, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of

considerations usually will point to dismissing the state law claims." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996)).

Here, the Court has determined that Plaintiff's federal claims against Defendants will be dismissed. Because the Court will dismiss Plaintiff's federal claims, the Court will **DECLINE** to continue exercising supplemental jurisdiction over Plaintiff's state-law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment (Doc. 24). Plaintiff's § 1983 claims against all defendants will be **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims will be **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**